# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TEXAS DEFENDER SERVICE
1927 Blodgett Street
 Houston, TX 77004-5111;

JOHN ALLEN RUBIO
TDCJ No. 999462
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351-8580;

GABRIEL PAUL HALL
No. 999599
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351-8580; and

BRIAN EDWARD DAVIS
No. 999036
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351-8580,

     Plaintiffs,

v.

UNITED STATES DEPARTMENT OF JUSTICE;
JEFFERSON B. SESSIONS, in his official capacity as
United States Attorney General
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001,

     Defendants.

Civil Action No. _____

## COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs Texas Defender Service, John Allen Rubio, Gabriel Paul Hall, and Brian

Edward Davis bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§

551-59, 701-06, for injunctive and other relief to set aside the Final Rule regarding Certification

Process For State Capital Counsel System, 78 Fed. Reg. 58,160-01 (Sept. 23, 2013), issued by

Defendants United States Department of Justice and United States Attorney General Jefferson B.

Sessions (together, "Defendants"), and, in support thereof, allege as follows:

## INTRODUCTION

1.      The right to representation by competent counsel is fundamental to ensuring the

fairness and accuracy of our system of criminal justice.  This is particularly true in capital cases,

where legal complexities abound, defendants are overwhelmingly indigent, and the stakes could

not be higher.  Our current framework for ensuring competent representation to capital

defendants has a critical flaw, however.  Whereas the Sixth Amendment to the United States

Constitution guarantees the right to counsel at trial and on direct review, and federal law

provides for the appointment of counsel to represent both state and federal capital prisoners in

federal habeas proceedings, there is no constitutional guarantee that state prisoners receive

appointed counsel during state post-conviction review.  As a result, death-sentenced state

prisoners often lack competent representation at the state of litigation best suited to presenting

new evidence that can demonstrate serious constitutional and other defects in their convictions

and sentences, and may forfeit the right to challenge such defects in subsequent proceedings.

2.      Chapter 154, Title 28 of the United States Code ("Chapter 154"), enacted as part

of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), attempts to fill this

gap by incentivizing states to provide competent counsel to represent indigent capital prisoners

on state post-conviction review.  It does so by offering a quid-pro-quo.  If a state "opts in" by

demonstrating that it provides timely appointed, competent, adequately compensated, and

adequately resourced counsel to all death-sentenced prisoners in state post-conviction review

proceedings, then the state may claim entitlement to specific procedural benefits during federal

habeas review of state capital convictions.  These procedural benefits include, most significantly,

a shorter statute of limitations for filing federal habeas petitions: 180 days after the state court

affirms the conviction, rather than one year after the affirmance becomes final.  The shortened

statute of limitations and other expedited procedures triggered by Chapter 154 make it even more

difficult for state capital prisoners to litigate constitutional and other claims in the federal courts,

increasing the likelihood that states will execute prisoners who were wrongfully convicted or

sentenced.

      3.      In 2006 amendments to AEDPA, Congress assigned to the Attorney General of

the United States the responsibility for certifying that a state's mechanism for appointment of

competent post-conviction counsel meets the requirements of Chapter 154 and directed him to

promulgate regulations to govern the certification process.  Pursuant to that authority, the

Defendants promulgated the Final Rule regarding Certification of State Capital Counsel System,

78 Fed. Reg. 58,160 (Sept. 23, 2013) (the "2013 Regulation").  The 2013 Regulation purports to

establish procedures and standards to govern the process by which the Attorney General will

determine whether a state is entitled to the benefits of Chapter 154.  However, those procedures

and standards are so deficient that they fail to guarantee a fair, transparent, and accurate

certification process.

      4.      In publishing the 2013 Regulation, the Attorney General stated for the first time,

without adequate notice, his erroneous view that Chapter 154 certification decisions are "orders"

rather than "rules" for purposes of the APA.  As a result, the certification process established by

the 2013 Regulation lacks the basic procedural protections of the APA's notice-and-comment

process—procedural protections that are necessary to ensure the fairness of agency decisions like

this one, which will affect the rights of broad categories of individuals.  The 2013 Regulation

requires only that the Attorney General, upon receiving a written request for certification from a

state, (1) make the request available online, publish a notice in the Federal Register, and solicit

public comment; (2) review the request and consider timely public comments; and (3) if certification is granted, publish the certification in the Federal Register.

5.      These certification procedures are arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A), in that they (1) do not expressly require a state to provide, or the Attorney General to solicit and publish, any information or documentation regarding a state's mechanism for appointment of counsel, thereby depriving affected parties of a meaningful opportunity to comment; (2) by failing expressly to require a state to provide such information, effectively shift the burden to the public to demonstrate that a state has *not* met Chapter 154's requirements; (3) do not require a state to provide any evidence that, in practice, it complies with its mechanism for appointing counsel; (4) do not require the Attorney General to respond to public comments; and (5) do not require the Attorney General to provide any explanation for his certification decisions, including any notice of denials.

6.      The 2013 Regulation also fails to provide sufficient standards to guide the Attorney General's certification decisions, and is therefore arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A).  In particular, the 2013 Regulation (1) fails to specify which collateral proceedings a state mechanism must cover; (2) fails to define key terms in prescribing the procedures by which counsel must be appointed; (3) includes a vague and meaningless "catch-all" provision for evaluating a state's standards of counsel competency that provides no guidance as to what standard will be applied; (4) fails to address the effect of prior judicial interpretation of Chapter 154 on the Attorney General's certification decisions; and (5) fails to address the nature and extent of ex parte communications between the Attorney General and state officials.

7.      In short, the 2013 Regulation permits the Attorney General to certify a state's compliance with Chapter 154 following only cursory process and without meaningful standards to guide his decision.  Compounding that unfairness, the 2013 Regulation, by providing that the Attorney General's certification is to include the date on which the qualifying capital counsel mechanism was established, could be construed to permit that certification decision to apply retroactively to prisoners who have already entered the federal habeas process and who meet Chapter 154's other requirements, thereby unexpectedly curtailing or eliminating their federal habeas proceedings.

8.      The 2013 Regulation thus allows a state to assert its entitlement to the substantial procedural benefits offered by Chapter 154—to the detriment of death-sentenced state prisoners—without ensuring that the state upholds its end of the bargain by providing timely, competent, adequately compensated, and adequately resourced counsel on state collateral review. The 2013 Regulation should be set aside, and Defendants should be ordered to correct these deficiencies in any future rule implementing Chapter 154.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action and venue is proper in this district under 28 U.S.C. § 1331, 28 U.S.C. § 1391(e), and 5 U.S.C. § 703.

## PARTIES

10.      Plaintiff Texas Defender Service ("TDS") is a non-profit organization established in 1995 by experienced Texas death penalty attorneys.  TDS's mission is to establish a fair and just criminal justice system in Texas.  In furtherance of that mission, TDS works to improve the quality of representation afforded to those facing a death sentence and to expose and eradicate the systemic flaws plaguing the Texas death penalty.  Among other programs, TDS attorneys represent death-sentenced Texas prisoners in post-conviction proceedings in federal court.

11.     Plaintiff John Allen Rubio was convicted and sentenced to death in Cameron County District Court in 2003.  That conviction was reversed.  In 2010, he was retried in Hidalgo County District Court and again sentenced to death.  He is currently in simultaneous direct appeal and state post-conviction proceedings.

12.     Plaintiff Gabriel Paul Hall was convicted and sentenced to death in Brazos County District Court in 2015.  He is currently in simultaneous direct appeal and state post-conviction proceedings.

13.     Plaintiff Brian Edward Davis was convicted and sentenced to death in Harris County District Court in 1992.  He was granted a new sentencing hearing in 2009, and in 2011 his death sentence was upheld.  He is currently in simultaneous direct appeal and state post-conviction proceedings.

14.     Defendant the United States Department of Justice is an agency of the Executive Branch of the Government of the United States within the meaning of 5 U.S.C. § 552(f)(1).

15.     Defendant Jefferson B. Sessions is the United States Attorney General and is the head of the United States Department of Justice.  He is sued in his official capacity.  Defendant Sessions is responsible for the Department of Justice's compliance with the laws of the United States and corresponding agency regulations, including the laws and regulations at issue in this case.

## STATEMENT OF FACTS RELEVANT TO ALL COUNTS

### I.     Statutory and Regulatory Background

#### A.  Chapter 154

16.     Chapter 154 was modeled on a 1989 report by the Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, known as the "Powell Committee" after its chair, retired Associate Justice Lewis F. Powell, Jr.  The Powell Committee's report found that the "pressing

need for qualified counsel to represent inmates in collateral review" was one of the most serious problems facing the existing system of capital post-conviction litigation.  *See Ad Hoc Committee on Federal Habeas Corpus in Capital Cases Committee Report*, 135 Cong. Rec. S13471-04, S13482 (daily ed. Oct. 16,1989).  To address this problem, the Committee recommended making available expedited federal habeas procedures to states that voluntarily provide competent counsel to indigent capital prisoners on state post-conviction review.  *Id.*  Thus, the Committee's proposal aimed to "fill a gap that now exists by encouraging the appointment of competent counsel … in state habeas or collateral proceedings."  *Id.* at S13483.

17.     Chapter 154 was enacted in 1996 as part of AEDPA.  It incorporates the Powell Committee's recommendations by offering a "quid pro quo arrangement under which states are accorded stronger finality rules on federal habeas review in return for strengthening the right to counsel for indigent capital defendants."  House Comm. on the Judiciary, Effective Death Penalty Act of 1995, H.R. Rep. No. 104-23, at 16 (1995).

18.     As originally enacted, Chapter 154 required federal courts to determine whether a state had established a qualifying mechanism for the appointment and compensation of counsel to represent indigent capital defendants on post-conviction review.  Following its enactment, several states, including Texas, sought approval from federal courts for their mechanisms for appointment of counsel, but none were successful in applying Chapter 154 to a particular case.  As part of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177 (2005) ("Patriot Act"), Congress amended Chapter 154 to transfer responsibility for certifying state compliance to the Attorney General of the United States.

19.     Under the statute, as amended, a state may "opt in" to Chapter 154 by requesting and receiving certification from the Attorney General that it "has established a mechanism for

the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death." 28 U.S.C. § 2265(a)(1)(A); *id.* § 2261(b)(1).  In addition, a state's mechanism "must provide for the entry of an order by a court of record—(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer; (2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or (3) denying the appointment of counsel upon a finding that the prisoner is not indigent." *Id.* § 2261(c).  To invoke Chapter 154 in a particular case, a state must show that "counsel was appointed pursuant to that mechanism, petitioner validly waived counsel, petitioner retained counsel, or petitioner was found not to be indigent." *Id.* § 2261(b)(2).

20.     If Chapter 154 applies to a federal habeas case, then the state may claim, among other things, that:  (1) the statute of limitations for filing a federal habeas petition is reduced from one year after the latest of four triggering events, 28 U.S.C. § 2244(d)(1)(A)-(D), to 180 days after the final state affirmance of the sentence on direct review or expiration of time to seek such review, *id.* § 2263(a); (2) the statute of limitations is tolled only while a petition for certiorari or first petition for state post-conviction review is pending, or for an additional thirty days upon showing of good cause, *id.* § 2263(b); (3) the prisoner may amend the petition only by meeting the stringent standard applicable to second or successive federal habeas petitions, *id.* § 2266(b)(3)(B); (4) modified forfeiture rules regarding some claims apply, *id.* § 2264; and (5) the district court and court of appeals must prioritize the habeas case over noncapital cases and must resolve it within specified deadlines, *id.* § 2266.

21.     These expedited procedures and enhanced finality rules make it significantly more difficult for state prisoners to litigate their claims in federal court, increasing the importance of state post-conviction proceedings.  If a prisoner's state post-conviction counsel is unqualified and under-resourced, that counsel may fail adequately to investigate the prisoner's claims, fail to follow state procedural rules, fail to plead specific allegations, or fail to develop a factual record of innocence, intellectual disability, or influence of racism on jury selection or the verdict. Under Chapter 154,  a state may argue that the prisoner would be precluded from raising these claims in federal court.  As a result, a state that can avail itself of Chapter 154's expedited procedures without having earlier appointed competent counsel can deny a death-sentenced prisoner any hope of a full and fair hearing on potentially meritorious claims, increasing the likelihood of a grave injustice.

22.     The amended Chapter 154 directs the Attorney General, upon request by an appropriate state official, to determine whether the state has fulfilled its end of the statutory bargain by establishing a "mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death," the date on which that mechanism was established, and "whether the State provides standards of competency for the appointment of counsel" in such proceedings.  *Id.* § 2265(a)(1)(C).  The Attorney General must promulgate regulations to govern the certification process.  *Id.* § 2265(b).

23.     The amended Chapter 154 further provides that the date the mechanism for appointment of counsel was established "shall be the effective date of the certification under this subsection."  *Id.* § 2265(a)(2).

24.     The Attorney General's certification decisions are subject to *de novo* review in the Court of Appeals for the District of Columbia Circuit.  *Id.* § 2265(c).

**B.  The 2008 Regulation**

25.     Defendants' efforts to promulgate regulations implementing Chapter 154 have been the subject of extensive litigation.  On June 6, 2007, former Attorney General Alberto Gonzales published a proposed regulation to govern certification decisions under Chapter 154. Certification Process for State Capital Counsel Systems, 72 Fed. Reg. 31,217-02 (proposed June 6, 2007).  The Notice of Proposed Rulemaking established a sixty-day comment period, which was subsequently reopened for an additional forty-five days.

26.     Numerous commenters, including TDS, raised substantial procedural and substantive deficiencies with the proposed rule.  TDS commented that among other deficiencies, the proposed rule failed adequately to define key terms, failed to provide adequate notice about the information that would be considered in the certification decision, failed to ensure that the state in fact provides competent, adequately resourced counsel to death-sentenced prisoners as required by Chapter 154, failed to require the state to demonstrate compliance with Chapter 154's requirements, failed to incorporate judicial interpretation of Chapter 154, and failed to provide adequate standards of counsel competency.  *See* Exhibit 1.

27.     On May 27, 2008, the Habeas Corpus Resource Center ("HCRC"), an agency of the Judicial Branch of the State of California that provides legal representation to indigent capital prisoners in state and federal habeas proceedings, filed an action in the Northern District of California against Defendants, alleging primarily that they violated the Freedom of Information Act and the APA by failing to release relevant agency records that were necessary for HCRC to evaluate the proposed regulations and participate meaningfully in the public comment period.

28.     On December 11, 2008, Defendants published a final rule.  Certification Process

for State Capital Counsel Systems, 73 Fed. Reg. 75,327 (Dec. 11, 2008) (the "2008 Regulation").

The 2008 Regulation never took effect.  Shortly after it was published, HCRC amended its

complaint, seeking to set aside or enjoin the effective date of the 2008 Regulation based on

various violations of the APA and the United States Constitution, including failure to provide

adequate notice and opportunity to comment.  On January 20, 2009, the district court granted a

preliminary injunction barring Defendants from putting the 2008 Regulation into effect without

first providing an additional comment period of at least thirty days and publishing a response to

any comments received during such period.  *See Habeas Corpus Res. Ctr. v. U.S. Dep't of

Justice*, No. C 08-2649 CW, 2009 WL 185423, at *6-8 (N.D. Cal. Jan. 20, 2009).

29.     Defendants subsequently solicited further comments on the proposed certification

process.  TDS submitted an additional comment reiterating its prior comments and attaching a

2008 report detailing examples of the poor quality of state habeas representation.  *See* Exhibit 2.

On November 23, 2010, Defendants published a final rule retracting the 2008 Regulation.

Certification Process for State Capital Counsel Systems; Removal of Final Rule, 75 Fed. Reg.

71,353-02 (Nov. 23, 2010).

### C.   The 2013 Regulation

30.     On March 3, 2011, Defendants published a new Notice of Proposed Rulemaking,

with the initial comment period closing on June 1, 2011.  Certification Process for State Capital

Counsel Systems, 76 Fed. Reg. 11,705-01 (proposed Mar. 3, 2011).  Following a supplemental

comment period concerning potential changes to the proposed rule, Certification Process for

State Capital Counsel Systems, 77 Fed. Reg. 7559 (proposed Feb. 13, 2012), the 2013

Regulation was published on September 23, 2013.  78 Fed. Reg. 58,160.

31.    The 2013 Regulation provides the following standards that a state mechanism for appointment of post-conviction counsel must meet to receive certification from the Attorney General:

(a) As provided in 28 U.S.C. 2261(c) and (d), the mechanism must offer to all such prisoners postconviction counsel, who may not be counsel who previously represented the prisoner at trial unless the prisoner and counsel expressly requested continued representation, and the mechanism must provide for the entry of an order by a court of record—

(1) Appointing one or more attorneys as counsel to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) Finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or

(3) Denying the appointment of counsel, upon a finding that the prisoner is not indigent.

(b) The mechanism must provide for appointment of competent counsel as defined in State standards of competency for such appointments.

(1) A State's standards of competency are presumptively adequate if they meet or exceed either of the following criteria:

(i) Appointment of counsel who have been admitted to the bar for at least five years and have at least three years of postconviction litigation experience. But a court, for good cause, may appoint other counsel whose background, knowledge, or experience would otherwise enable them to properly represent the petitioner, with due consideration of the seriousness of the penalty and the unique and complex nature of the litigation; or

(ii) Appointment of counsel meeting qualification standards established in conformity with 42 U.S.C. 14163(e)(1) and (2)(A), if the requirements of 42 U.S.C. 14163(e)(2)(B), (D), and (E) are also satisfied.

(2) Competency standards not satisfying the benchmark criteria in paragraph (b)(1) of this section will be deemed adequate only if they otherwise reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases

(c) The mechanism must provide for compensation of appointed counsel.

(1) A State's provision for compensation is presumptively adequate if the authorized compensation is comparable to or exceeds—

(i) The compensation of counsel appointed pursuant to 18 U.S.C. 3599 in Federal habeas corpus proceedings reviewing capital cases from the State;

(ii) The compensation of retained counsel in State postconviction proceedings in capital cases who meet State standards of competency sufficient under paragraph (b);

(iii) The compensation of appointed counsel in State appellate or trial proceedings in capital cases; or

(iv) The compensation of attorneys representing the State in State postconviction proceedings in capital cases, subject to adjustment for private counsel to take account of overhead costs not otherwise payable as reasonable litigation expenses.

(2) Provisions for compensation not satisfying the benchmark criteria in paragraph (c)(1) of this section will be deemed adequate only if the State mechanism is otherwise reasonably designed to ensure the availability for appointment of counsel who meet State standards of competency sufficient under paragraph (b) of this section.

(d) The mechanism must provide for payment of reasonable litigation expenses of appointed counsel. Such expenses may include, but are not limited to, payment for investigators, mitigation specialists, mental health and forensic science experts, and support personnel. Provision for reasonable litigation expenses may incorporate presumptive limits on payment only if means are authorized for payment of necessary expenses above such limits.

28 C.F.R. § 26.22. The 2013 Regulation also imposes a timeliness requirement by defining

"appointment" to mean "provision of counsel *in a manner that is reasonably timely* in light of

the time limitations for seeking State and Federal postconviction review and the time required for

developing and presenting claims in the postconviction proceedings." *Id.* § 26.21 (emphasis

added).

32.    The 2013 Regulation further sets forth a procedure for certification of state capital

counsel mechanisms:

(a) An appropriate State official may request in writing that the Attorney General determine whether the State meets the requirements for certification under § 26.22 of this subpart.

(b) Upon receipt of a State's request for certification, the Attorney General will make the request publicly available on the Internet (including any supporting materials included in the request) and publish a notice in the Federal Register—

    (1) Indicating that the State has requested certification;

    (2) Identifying the Internet address at which the public may view the State's request for certification; and

    (3) Soliciting public comment on the request.

(c) The State's request will be reviewed by the Attorney General. The review will include consideration of timely public comments received in response to the Federal Register notice under paragraph (b) of this section, or any subsequent notice the Attorney General may publish providing a further opportunity for comment. The certification will be published in the Federal Register if certification is granted. The certification will include a determination of the date the capital counsel mechanism qualifying the State for certification was established.

(d) A certification by the Attorney General reflects the Attorney General's determination that the State capital counsel mechanism reviewed under paragraph (c) of this section satisfies chapter 154's requirements. A State may request a new certification by the Attorney General to ensure the continued applicability of chapter 154 to cases in which State postconviction proceedings occur after a change or alleged change in the State's certified capital counsel mechanism. Changes in a State's capital counsel mechanism do not affect the applicability of chapter 154 in any case in which a mechanism certified by the Attorney General existed throughout State postconviction proceedings in the case.

(e) A certification remains effective for a period of five years after the completion of the certification process by the Attorney General and any related judicial review. If a State requests re-certification at or before the end of that five-year period, the certification remains effective for an additional period extending until the completion of the re-certification process by the Attorney General and any related judicial review.

28 C.F.R. § 26.23.

    33.    Finally, the 2013 Regulation directs the Attorney General to determine, as part of

his certification, "the date the capital counsel mechanism qualifying the State for certification

was established."  28 C.F.R. § 26.23(c).  As noted above, Chapter 154 provides that the date the

mechanism for appointment of counsel was established "shall be the effective date of the

certification under this subsection."  28 U.S.C. § 2265(a)(2).  Taken together, these provisions

could be construed to permit the Attorney General's certification decision to apply retroactively

to state prisoners whose convictions have become final and for whom Chapter 154's other

requirements are met.

34.    The 2013 Regulation does not mention retroactivity.  Yet retroactive application

of the Attorney General's certification to such prisoners would create an obvious and severe

constitutional defect.  The most significant effect of certification under Chapter 154 is to reduce

the statute of limitations for filing a federal habeas petition from one year to 180 days.

Accordingly, if a certification decision were applied retroactively, a prisoner whose state

convictions had become final and who had been appointed post-conviction counsel pursuant to a

state's certified mechanism could find his time to file a federal habeas petition unexpectedly cut

short, or his opportunity for federal habeas review eliminated entirely.

## D.  The Northern District of California Litigation

35.    On September 30, 2013, HCRC and the Office of the Federal Public Defender for

the District of Arizona (collectively, the "N.D. Cal. Plaintiffs") brought an action in the Northern

District of California to set aside the 2013 Regulation based on violations of the APA and the

United States Constitution.  The district court granted a Temporary Restraining Order and,

subsequently, a Preliminary Injunction, enjoining the effective date of the 2013 Regulation.

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, No. C 13-4517 CW, 2013 WL 5692031 (N.D.

Cal. Oct. 18, 2013); *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, No. C 13-4517 CW, 2013

WL 6326618 (N.D. Cal. Dec. 4, 2013).

36.     On August 7, 2014, the district court granted in part the plaintiffs' motion for

summary judgment.  Holding that the 2013 Regulation was both substantively and procedurally

deficient in numerous respects, the court enjoined Defendants from putting it into effect, and

ordered them to remedy the identified defects in any future efforts to implement the procedure

prescribed by Chapter 154.  *See Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, No. C 13-4517

CW, 2014 WL 3908220, at *13 (N.D. Cal. Aug. 7, 2014).

37.     On appeal, a panel of the Ninth Circuit vacated the district court's decision on the

ground that the N.D. Cal. Plaintiffs lacked standing to challenge the 2013 Regulation.  The panel

concluded that, because the certification process had not commenced, the "Attorney General may

very well afford the Defender Organizations all the procedural protections they seek."  The panel

further denied the N.D. Cal. Plaintiffs' request for a limited remand to afford their death-

sentenced clients an opportunity to intervene, concluding that some of the claims their clients

would raise if they intervened were not yet ripe for review.  The panel did not address the merits

of the N.D. Cal. Plaintiffs' claims regarding the deficiencies in the 2013 Regulation.  *See Habeas*

*Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241 (9th Cir. 2016).  On January 27, 2017,

the United States Supreme Court denied the N.D. Cal. Plaintiffs' motion to stay the Ninth Circuit

mandate, *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 137 S. Ct. 910 (2017) (Mem.),

thereby allowing the 2013 Regulation to take effect.  The Supreme Court denied certiorari on

March 20, 2017.  *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 137 S. Ct. 1338 (2017)

(Mem.)

## II.     Texas's Certification Application

38.     The State of Texas has long sought certification under Chapter 154, initially in

federal court and then from the Attorney General, based on a mechanism purportedly established

in 1995.  Prior to the issuance of the 2013 Regulation, on March 11, 2013, Texas submitted a

certification request.  Texas's certification application failed entirely to explain how its

mechanism satisfied the statutory and regulatory requirements for certification.  The application

also included multiple misrepresentations, seeking certification dating back to 1995 based on

features of its mechanism that were not in place until more than a decade later.  *See* Exhibit 3.[1]

No notice of Texas's certification request was provided to the public, to death-sentenced

inmates, or to their attorneys for over four years, thereby denying interested parties the chance to

be heard regarding the deficiencies in Texas's appointment of counsel mechanism.

     39.     On November 16, 2017, the Department of Justice published a notice in the

Federal Register advising the public of Texas's certification request and initiating a sixty-day

public comment period.  *See* Exhibit 4.  On December 18, 2017, Texas submitted an amended

application for certification in the form of a short supplemental letter to the Department of

Justice advising it of changes that had been made to its system for appointing post-conviction

counsel since its initial request.  *See* Exhibit 5.  Texas's amended application did not cure the

deficiencies in its initial application.  On December 27, 2017, the Department of Justice

published a notice advising the public of Texas's supplemental letter and extending the comment

period to February 26, 2018.  *See* Exhibit 6.

     40.     Plaintiff TDS is participating in the public comment process and is currently

preparing its substantive comment for submission.

---

[1] The State of Arizona has also applied for certification pursuant to Chapter 154.  *See*
Department of Justice, Office of Legal Policy, *Pending Requests & Final Decisions*,
https://www.justice.gov/olp/pending-requests-final-decisions (accessed Feb. 22, 2018).

### III.   Deficiencies in the 2013 Regulation

41.     The Attorney General's review of Texas's request for certification will be governed by the bare-bones procedures and standards established by the 2013 Regulation.  As described below, those procedures and standards fail to impose meaningful constraints on the Attorney General's discretion to certify states' compliance with Chapter 154.

### A.  Procedural Deficiencies

42.     The 2013 Regulation establishes a minimal certification process lacking basic protections necessary to guarantee the fairness, transparency, and accuracy of agency action. First, the 2013 Regulation permits a state to initiate the certification process merely by submitting a "request in writing" from an "appropriate State official."  The 2013 Regulation does not expressly require a state to provide any explanation of the mechanism for appointment of counsel that it contends meets the requirements of Chapter 154, nor is the Attorney General required to publish the factual basis or rationale for the proposed certification.  Instead, the public is forced to speculate as to the state's basis for seeking certification and the factors that the Attorney General will consider in making his determination.  Without even the most basic information about the state's request or the Attorney General's decisionmaking, the public cannot reliably evaluate it or participate meaningfully in the comment process.

43.     Second, and relatedly, the 2013 Regulation does not expressly impose any burden on a state to show that its mechanism for appointment of post-conviction counsel meets Chapter 154's requirements.  It need only submit a bare-bones "request in writing," which need not be accompanied by any evidence or documentation.  As a result, and contrary to Congress's intent in enacting Chapter 154 and well-established judicial decisions interpreting Chapter 154, the

2013 Regulation shifts the burden to the public to demonstrate that the state is *not* in compliance with Chapter 154's requirements.

44.     Third, the 2013 Regulation does not require a state to demonstrate that, in practice, it complies with its own mechanism for appointment of counsel.  The state need not show that counsel were actually timely appointed to represent capital prisoners within the state, that such counsel actually met the state's own standards for competency, or that they actually received adequate compensation and reimbursement for reasonable litigation expenses.  Thus, under the plain terms of the 2013 Regulation, the Attorney General may improperly certify a state that enacted a mechanism for appointing counsel and then proceeded to disregard portions of that mechanism.

45.     Fourth, the 2013 Regulation does not require the Attorney General to respond to public comments, even if they raise significant problems, rendering meaningless the requirement that he "solicit" and "consider" such comments.  The 2013 Regulation leaves the Attorney General free arbitrarily to disregard relevant comments.  Indeed, in a 2017 Memorandum, the Attorney General indicated his intention not to publish any proposed certification decision, which is inconsistent with standard APA procedures.  *See* Exhibit 7.

46.     Fifth, the 2013 Regulation does not require the Attorney General to explain his decisions to certify or to deny certification.  Combined with the absence of any requirement that the Attorney General respond to comments, this omission deprives the public and interested parties of their right to understand the basis for agency action affecting important legal rights.  It further frustrates the reviewing court's ability to evaluate the Attorney General's decisions, precluding meaningful appellate review.

47.     Finally, and without notice, the Attorney General stated in publishing the 2013

Regulation his view that certification decisions under Chapter 154 are "orders rather than rules"

for purposes of the APA, and are therefore exempt from notice-and-comment rulemaking.  78

Fed. Reg. at 58,174.  This is error.  The Attorney General's certification decisions apply

prospectively and affect the rights of a broad class of individuals, *i.e.*, all indigent death-

sentenced prisoners within a state who were appointed post-conviction counsel pursuant to the

state's certified mechanism.  Accordingly, the Attorney General's certification decisions are

subject to the APA's notice-and-comment requirements.  These requirements provide basic

procedural protections to ensure that agency decisionmaking is reasoned and transparent.

48.     The cumulative result of these deficiencies is a certification process that is

arbitrary, unreliable, and deeply unfair.  The 2013 Regulation permits certification of a state

without any showing of compliance, meaningful opportunity for public comment, or explanation

of the decision.  This process is inadequate to ensure that no state will receive the benefits of

Chapter 154 unless it meets its own responsibilities under the statutory scheme, thereby

undermining Congress's intent and threatening arbitrarily to deprive capital prisoners a full and

fair opportunity to litigate their constitutional and other claims in the federal courts.

**B.  Substantive Deficiencies**

49.     In addition to the procedural deficiencies described above, the 2013 Regulation

fails to provide meaningful standards to guide the Attorney General's certification decisions and

ensure that Chapter 154's requirements are met.

50.     First, the 2013 Regulation fails to specify which collateral proceedings a state's

mechanism must cover.  The 2013 Regulation defines "State postconviction proceedings" as

"collateral proceedings in State court," 28 C.F.R. § 26.21, but does not articulate in which

collateral proceedings a death-sentenced state prisoner is entitled to counsel that meets Chapter

154's requirements.  This is of particular concern to Plaintiffs because Texas does not provide

counsel in all state post-conviction proceedings.  For example, there is no right to counsel in

proceedings to present and litigate claims that a prisoner is incompetent to be executed, or to

litigate a second or successive application for state post-conviction relief even if the Court of

Criminal Appeals finds that the prerequisites for consideration of such an application have been

met.

51.     Second, the 2013 Regulation fails to define key terms in prescribing the

procedures by which counsel must be appointed.  It merely parrots the statutory language,

providing that a state's mechanism must enable a court to enter an order—"(1) Appointing one

or more attorneys as counsel to represent the prisoner upon a finding that the prisoner is indigent

and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) Finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made

the decision with an understanding of its legal consequences; or (3) Denying the appointment of

counsel, upon a finding that the prisoner is not indigent."  *Id.* § 26.22(a).  The 2013 Regulation

fails entirely to define the phrases "unable competently to decide" and "understanding of its legal

consequences" by reference to *any* recognized legal standard; to require any particular level of

detail for a requisite "finding"; or to delineate under what circumstances a hearing would be

"necessary" under subsection (a)(2).  This failure to define key terms permits a state to maintain

a mechanism that provides no process or standards for determining whether a prisoner is aware

of his or her rights or competently or knowingly accepts or rejects the appointment of counsel.

52.     Third, the 2013 Regulation fails to provide adequate standards for the competency

of appointed counsel.  In particular, the 2013 Regulation enumerates certain requirements for a

state's standards of competency, but also includes a vague and overbroad "catch-all" provision that permits certification if a state's competency standards "otherwise reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases." *Id.* § 26.22(b)(2). This "catch-all" fails to provide meaningful standards for evaluating state mechanisms for appointing counsel.

53.     Fourth, prior to the Patriot Act amendments, numerous judicial decisions interpreting Chapter 154 gave meaning to its requirements for state mechanisms for the appointment of counsel.  The 2013 Regulation, however, does not provide that the Attorney General must adhere to these judicial interpretations in making his certification decisions.  Indeed, it does not address the effect of these prior judicial decisions at all.  Instead, it states only that "prior judicial interpretation of chapter 154, much of which remains generally informative, supports many features of this rule. . . .  To the extent the rule approaches certain matters differently from some past judicial decisions, there are reasons for the differences."  78 Fed. Reg. at 58,164.  The 2013 Regulation's failure to address the effect of prior judicial decisions creates intolerable uncertainty regarding the standards that will be applied, renders the Attorney General's decisions vague and arbitrary, and denies the public a meaningful opportunity to comment on proposed certification decisions.

54.     This issue is of particular concern to Plaintiffs because Texas is currently seeking certification based on a mechanism purportedly established in 1995.  The Fifth Circuit has already held that this same mechanism does not meet the requirements of Chapter 154 because it does not provide "specific, mandatory standards for capital habeas counsel."  *Mata v. Johnson*, 99 F.3d 1261, 1267 (5th Cir. 1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir.

1997).  The 2013 Regulation provides no guidance as to the effect of this finding, if any, on the Attorney General's consideration of Texas's application.

55.     Finally, the 2013 Regulation does not prohibit ex parte communication between state applicants for certification and the Attorney General and provides no standards to govern the nature and effect of such communications.  Of particular relevance here, Texas engaged in extensive ex parte communications with the Department of Justice.  Texas submitted its request for certification to former Attorney General Eric Holder by letter dated March 11, 2013.  On March 29, 2013, the Department of Justice responded that it was in the process of promulgating regulations to govern the certification process, but that, "[i]n the meantime," it would "begin reviewing the materials you submitted in support of Texas's request for certification on the expectation that it may help speed the ultimate determination of the certification request by the Attorney General."  *See* Exhibit 8.  On June 25, 2013, Texas responded to the Department of Justice, urging it to certify Texas pursuant to Chapter 154 *before* promulgating the 2013 Regulation, and arguing that the Attorney General lacked authority to postpone his certification decision until after the 2013 Regulation was published.  *See* Exhibit 9.

56.     Plaintiffs were not copied on any of this correspondence, and no notice was provided to the public.  Plaintiffs have no way of knowing whether additional communications between Texas and the Attorney General have taken place regarding Texas's application, or whether those communications will affect the Attorney General's certification decision. Plaintiffs have submitted Freedom of Information Act requests for this information but received no responses.  They therefore have no meaningful opportunity to comment on the issues discussed therein.

**IV.    Plaintiffs' Interest in the 2013 Regulation**

57.    Plaintiffs have a significant interest in the 2013 Regulation.  Plaintiffs Rubio, Hall, and Davis (collectively, "Individual Plaintiffs") have been sentenced to death by the State of Texas and have not yet completed federal habeas review.  If the Attorney General certifies Texas pursuant to Chapter 154 and the 2013 Regulation, and a court determines that Chapter 154's other requirements are met in their individual cases, they may face significant procedural burdens, including a reduction in their time to investigate, prepare, and file their federal habeas petitions; limits on their ability to amend their petitions; and limits on the scope of federal review.  Individual Plaintiffs therefore have an interest in ensuring the fairness, transparency, and accuracy of the Attorney General's decision regarding Texas's request for certification.

58.    Furthermore, Individual Plaintiffs must make strategic litigation decisions taking into account the possibility that the Attorney General will grant Texas's certification request.  Because the 2013 Regulation fails to provide meaningful guidance as to how and on what basis the Attorney General will make his decision, Individual Plaintiffs are unable accurately to predict whether Texas will receive certification.  They are therefore forced to make consequential decisions affecting their legal rights in the face of uncertainty about the standards that will apply to their federal habeas petitions.

59.    Individual Plaintiffs are currently in either state or federal post-conviction proceedings.  They therefore face the threat that, if Texas receives certification and if a court determines that Chapter 154's requirements are met in their cases, Chapter 154's truncated statute of limitations and narrowed tolling periods will be applied retroactively to them, immediately and unexpectedly reducing their time for filing a federal habeas petition.  Such retroactive application would deprive Individual Plaintiffs of due process of law.

60.     Plaintiff TDS represents state capital prisoners in federal habeas proceedings and receives income from court appointments in these cases.  The deficient standards and procedures established by the 2013 Regulation impair TDS attorneys' ability to provide sound legal advice and make strategic decisions with respect to their clients' cases.  The 2013 Regulation has had a chilling effect on TDS's ability to accept new clients entering federal court for the first time.  TDS has limited resources and makes decisions about case acceptance based, in part, on predictable future deadlines in relation to the anticipated future capacity of its staff.  As a result of the deficient regulations, TDS has had to act conservatively in taking on new clients in light of the uncertainty about what the limitations periods for their claims will be.  For example, if the Attorney General's certification decision were construed to apply retroactively to death-sentenced prisoners in Texas, TDS would be forced to devote substantial and immediate resources to the newly accepted case in order to comply with dramatically shortened statutes of limitations.  Avoiding such crises are important to maintaining TDS's stability as an organization and to staff retention.

61.     Finally, because of the deficiencies in the 2013 Regulation, TDS and Individual Plaintiffs have been denied an opportunity to comment meaningfully on Texas's certification application.  Texas's application, which has been published, provides an incomplete, inaccurate, and out-of-date picture of Texas's mechanism for appointment of counsel.  As a result, TDS has been forced to try to undertake substantial factfinding in an effort to understand the mechanism that Texas seeks to certify, without notice of what information the Attorney General will consider in making its certification decision.  And Individual Plaintiffs lack access entirely to resources that would allow them independently to investigate Texas's mechanism and form an opinion about whether it complies with the 2013 Regulation.  Plaintiffs have therefore been

injured, and will continue to be injured, by the inability to offer fully informed comments before the close of the comment period.

62. Accordingly, Plaintiffs have been significantly adversely affected by the 2013 Regulation and require an injunction to set it aside.

## COUNT I

**(Procedurally Deficient Certification Process in Violation of the APA)**

63. Paragraphs 1 to 62 are incorporated herein as set forth above.

64. The deficient certification procedures set forth in the 2013 Regulation deprive the public of a meaningful opportunity to comment and fail to ensure a fair, accurate, and transparent process.

65. The 2013 Regulation does not require a state to provide, or the Attorney General to solicit, any information or documentation regarding a state's mechanism for appointment of counsel, thereby depriving affected parties of a meaningful opportunity to comment.

66. The 2013 Regulation shifts the burden to the public to demonstrate that a state has *not* met Chapter 154's requirements.

67. The 2013 Regulation does not require a state to provide any evidence that, in practice, it complies with its mechanism for appointing counsel.

68. The 2013 Regulation does not require the Attorney General to respond to public comments.

69. The 2013 Regulation does not require the Attorney General to provide any explanation for his certification decisions.

70. The 2013 Regulation erroneously treats the Attorney General's certification decisions as orders or adjudications, and not as a rulemaking subject to notice-and-comment requirements under the APA.

71.     Defendants' implementation of the 2013 Regulation violates the Administrative Procedure Act, 5 U.S.C. § 553(b)-(c) and 5 U.S.C. § 706(2)(A), and constitutes arbitrary and capricious agency action.

## COUNT II

**(Substantively Deficient Certification Process in Violation of the APA)**

72.     Paragraphs 1 to 62 are incorporated herein as set forth above.

73.     The standards for certification set forth in the 2013 Regulation fail to ensure that a state will be certified only if it meets the requirements of Chapter 154 and fail to provide adequate guidance to the public regarding how and on what basis the Attorney General will grant such certification.

74.     The 2013 Regulation fails to specify which collateral proceedings a state's mechanism must cover.

75.      The 2013 Regulation fails to define key terms in prescribing the procedures by which counsel must be appointed.

76.     The 2013 Regulation fails to provide meaningful criteria for certification of a state's standards for competency of counsel.

77.     The 2013 Regulation fails to address the effect of prior judicial interpretation of Chapter 154.

78.     The 2013 Regulation fails to address the nature and effect of ex parte communications between state officials and Defendants.

79.     Defendants' implementation of the 2013 Regulation violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and constitutes arbitrary and capricious agency action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

A.      Hold unlawful and set aside the Defendants' Certification Process for State Capital Counsel System, Final Rule, 78 Fed. Reg. 58,160-01 (Sept. 23, 2013) for failing to comply with the requirements of the APA, 5 U.S.C. §§ 551-59, 701-06, as alleged in the Causes of Action above.  There exists an actual, present and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' actions described in those causes of action.  Furthermore, this controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate.  28 U.S.C. §§ 2201, 2202;

B.      Order Defendants to remedy the deficiencies alleged in the Causes of Action above in any future effort to implement the procedure prescribed by Chapter 154;

C.      Award Plaintiffs their costs and reasonable attorney's fees incurred in this action, 28 U.S.C. § 2412(d)(1)(A); and

D.      Grant such other and further relief as the Court may deem just and proper

Date:  February 23, 2018                    Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

*/s/ Michael B. DeSanctis*
Michael B. DeSanctis (D.C. Bar No. 460961)
Ginger D. Anders (D.C. Bar No. 494471)
Celia R. Choy (D.C. Bar No. 1017211)
Adele M. El-Khouri (D.C. Bar No. 1025090)
1155 F Street NW
Washington, D.C. 20004-1343
(202) 220-1100
michael.desanctis@mto.com
ginger.anders@mto.com
celia.choy@mto.com
adele.el-khouri@mto.com

*Attorneys for Plaintiff Texas Defender Service*

/s/  David A. Schulman
David A. Schulman (TX Bar No.17833400)
(Not admitted to practice in D.C.)
1801 East 51st Street, Suite 365-474
Austin, TX 78723-3434
(512) 474-4747
zdrdavida@davidschulman.com

*Attorney for Plaintiff John Allen Rubio*

/s/  Robert C. Owen
Robert C. Owen (IL Bar No. 6318652)
(Not admitted to practice in D.C.)
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 E. Chicago Avenue
Chicago, IL 60611
(312) 503-0135
robert.owen@law.northwestern.edu

/s/  Raoul D. Schonemann
Raoul D. Schonemann (TX Bar No. 00786233)
(Not admitted to practice in D.C.)
Capital Punishment Clinic
University of Texas School of Law
727 E. Dean Keeton Street
Austin, TX 78705-3299
(512) 232-9391
rschonemann@law.utexas.edu

/s/  David R. Dow
David R. Dow (TX Bar No. 06064900)
(Not admitted to practice in D.C.)
University of Houston Law Center
4604 Calhoun Road
Houston, TX 77204-6060
(713) 743-2171
ddow@central.uh.edu

*Attorneys for Plaintiff Gabriel Paul Hall*

/s/  Kenneth McGuire
Kenneth McGuire (TX Bar No. 00798361)
(Not admitted to practice in D.C.)

McGuire Law Firm
P.O. Box 79535
Houston, TX 77279-9535
(713) 223-1558
kennethmcguire@att.net

*Attorney for Plaintiff Brian Edward Davis*

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| TEXAS DEFENDER SERVICE; JOHN ALLEN RUBIO; GABRIEL PAUL HALL; and BRIAN EDWARD DAVIS | UNITED STATES DEPARTMENT OF JUSTICE; JEFFERSON B. SESSIONS, in his official capacity as United States Attorney General |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Harris Coun
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
SEE ADDENDUM.

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR
PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical
   Personal Injury Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If
   Administrative Agency is
   Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category
may be selected for this category of
case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*     **OR**     ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property
   Damage
☐ 385 Property Damage
   Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions
   of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New
   Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant)
☐ 871 IRS-Third Party 26 USC
   7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of
   Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC
   3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization
   Application
☐ 465 Other Immigration
   Actions
☐ 470 Racketeer Influenced
   & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/
   Exchange
☐ 896 Arbitration
☒ 899 Administrative Procedure
   Act/Review or Appeal of
   Agency Decision
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions
   (if not administrative agency
   review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-59, 701-06, for injunctive and other relief to set aside final rule

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check **YES** only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |

DATE: ___02/23/2018___   SIGNATURE OF ATTORNEY OF RECORD ___/s/ Michael B. DeSanctis___

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| TEXAS DEFENDER SERVICE; JOHN ALLEN RUBIO; GABRIEL PAUL HALL; and BRIAN EDWARD DAVIS | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF JUSTICE; JEFFERSON B. SESSIONS, in his official capacity as United States Attorney General | ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530-00001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    SEE ADDENDUM.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:          02/23/2018          

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| TEXAS DEFENDER SERVICE; JOHN ALLEN RUBIO; GABRIEL PAUL HALL; and BRIAN EDWARD DAVIS <br><br> *Plaintiff(s)* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE; JEFFERSON B. SESSIONS, in his official capacity as United States Attorney General <br><br> *Defendant(s)* | ) ) ) ) ) )   Civil Action No. ) ) ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Jefferson B. Sessions, in his offiical capacity as United States Attorney General
950 Pennsylvania Avenue NW
Washington, D.C. 20530-00001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    SEE ADDENDUM.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____02/23/2018_____          _____
                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

**ADDENDUM**

| | |
|---|---|
| *Attorneys for Plaintiff Texas Defender Service* | Michael B. DeSanctis<br>Ginger D. Anders<br>Celia R. Choy<br>Adele M. El-Khouri<br>Munger, Tolles & Olson<br>1155 F Street NW<br>Washington, D.C. 20004-1343<br>(202) 220-1100 |
| *Attorney for Plaintiff John Allen Rubio* | David A. Schulman<br>1801 East 51st Street, Suite 365-474<br>Austin, TX 78723-3434<br>(512) 474-4747 |
| *Attorneys for Plaintiff Gabriel Paul Hall* | Robert C. Owen<br>Bluhm Legal Clinic<br>Northwestern Pritzker School of Law<br>375 E. Chicago Avenue<br>Chicago, IL 60611-3069<br>(312) 503-0135<br><br>Raoul D. Schonemann<br>Capital Punishment Clinic<br>University of Texas School of Law<br>727 E. Dean Keeton Street<br>Austin, TX 78705-3299<br>(512) 232-9391<br><br>David R. Dow<br>University of Houston Law Center<br>4604 Calhoun Road<br>Houston, TX 77204-6060<br>(512) 232-9391 |
| *Attorney for Plaintiff Brian Edward Davis* | Kenneth McGuire<br>McGuire Law Firm<br>P.O. Box 79535<br>Houston, TX 77279-9535<br>(713) 223-1558 |